966 F.2d 1442
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Terry LAMPERT, Plaintiff-Appellant,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, A Virginia Corporation,
Defendant-Appellee.
 No. 91-1219.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 8, 1992
Decided: June 8, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield. Charles T. Cunningham, Magistrate Judge. (CA-90-309-1)
 ARGUED: Derrick Ward Lefler, Gibson & Mcfadden, Princeton, West Virginia, for Appellant.
 Thomas William Alvey, Jr., Thompson & Mitchell, Belleville, Illinois, for Appellee.
 ON BRIEF: Michael F. Gibson, Gibson & Mcfadden, Princeton, West Virginia, for Appellant.
 Kurt E. Reitz, Donald K. Schoemaker, Thompson & Mitchell, Belleville, Illinois; Wade T. Watson, Sanders, Watson & White, Bluefield, West Virginia, for Appellee.
 S.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Terry Lampert filed suit against his employer, Norfolk & Western Railway Co. (N & W), under the Federal Employers' Liability Act (FELA) alleging negligence and a resulting hearing loss. 45 U.S.C. §§ 51-60 (1986). The district court granted summary judgment for N & W after concluding that any reasonable jury would find Lampert's claim barred by FELA's three-year statute of limitations on the basis that the claim had accrued in January, 1984 when Lampert's hearing loss was diagnosed and when hearing protection was prescribed. We affirm.
 
 I.
 
 2
 Viewed in the light most favorable to Lampert, the evidence presented for the district court's consideration of the summary judgment motion included the following: On June 7, 1974, after two years of college, Lampert began working for N & W as a road brakeman. He eventually was promoted to engineer. On January 4, 1984, Mr. P.G. Martin, an audiologist, tested Lampert's hearing and the resulting audiogram was used by Dr. Robert Miller to diagnose a severe bilateral high frequency hearing loss. Lampert also complained of a related problem, tinnitus (ringing), in both ears. Dr. Miller knew that Lampert was a railroad engineer and warned that continued exposure to high noise levels would result in increased ear damage. He recommended that Lampert use hearing protection on the job. On several occasions afterwards, Lampert told Dr. Miller he was wearing hearing protection on the job. Dr. Miller did not specifically tell Lampert that noise from the workplace had caused his hearing loss or the ringing in his ears.
 
 
 3
 Lampert had sometimes experienced temporary hearing loss when he would come down from the engine to complete his paperwork.
 
 
 4
 In approximately 1985, Lampert began to engage seriously in the hobby of target shooting. He acquired a firearm dealer's license and shot several types of weapons. He always wore hearing protection except when shooting a weapon equipped with a silencer.
 
 
 5
 An audiological examination performed in July, 1989 indicated that Lampert's hearing pattern essentially was unchanged since the 1984 examination.
 
 II.
 
 6
 Because FELA does not define when a cause of action accrues for a latent occupational disease or injury, case law controls. Urie v. Thompson, 337 U.S. 163 (1949), was the first articulation of the socalled federal discovery rule. Urie held that the FELA limitations period for a latent disease began "only when the accumulated effects of the deleterious substance manifest themselves." 337 U.S. at 16872. United States v. Kubrick, 444 U.S. 111 (1979), concerned a Federal Tort Claims Act medical malpractice action for hearing loss. Urie and Kubrick have been read together in the FELA context to mean that the claim is not "manifest" until the claimant knew, or in the exercise of reasonable diligence should have known, of both the latent injury and its work-related cause. See Townley v. Norfolk & Western Ry. Co., 887 F.2d 498, 501 (4th Cir. 1989). See alsoAlbert v. Maine Central R.R. Co., 905 F.2d 541, 543-44 (1st Cir. 1990); Fries v. Chicago & Northwestern Transp. Co., 909 F.2d 1092, 1095 (7th Cir. 1990); DuBose v. Kansas City Southern Ry. Co., 729 F.2d 1026, 1029-30 (5th Cir.), cert. denied, 469 U.S. 854 (1984); Kichline v. Consolidated Rail Corp., 800 F.2d 356, 358 (3rd Cir. 1986).
 
 
 7
 When a claimant can be charged with constructive knowledge of a latent injury and its cause depends upon factors unique to each case.
 
 
 8
 DuBose, 729 F.2d at 1031; see also Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506-07 (1957) (test is whether a reasonable juror could find that employer negligence played any part at all in producing injury); 45 U.S.C. § 51. However, one does not need a definite medical diagnosis that hearing loss is work-related to start the limitations period. Townley, 887 F.2d at 501.
 
 
 9
 The material issue in this appeal is whether the district court had been presented sufficient evidence from which it could determine that a reasonable jury might find that before March 29, 1987, Lampert did not actually know or, in the exercise of due diligence, should not have known that his hearing loss had a possible relation to his noisy work environment. We agree with the district court that a reasonable jury could not have found in Lampert's favor on this issue if faced with evidence, on one hand, that Lampert had not been informed specifically that the extreme noise of his workplace had contributed to his hearing deficit and, on the other hand, with undisputed evidence that he (1) had been informed in 1984 that he had a hearing loss and that continuing unprotected exposure to loud noise would make it worse, (2) had experienced periods of temporary hearing loss following loud noises, and (3) had described as "almost deafening" the noise inside the locomotive engine.
 
 III.
 
 10
 In the alternative, Lampert argues that N & W is equitably estopped from using a limitations defense because it fraudulently concealed critical facts in three ways:
 
 
 11
 1. by prohibiting employees' empirical tests of noise levels;
 
 
 12
 2. by unfairly rigging a test run wherein an acoustical engineer was to measure sound levels for a claimant in another case against Appellee, with the result that the train was far quieter than on an ordinary run; and
 
 
 13
 3. by forbidding ear protection until June 1989, which implied that the dangers of wearing ear protection were far greater than those presented by workplace noise exposure.
 
 
 14
 While the statute of limitations is an affirmative defense, Lampert bears the burden of establishing any exception to the rule. Drazan v. United States, 762 F.2d 56, 60 (7th Cir. 1985). Within the limitations context, equitable estoppel presupposes that a plaintiff has discovered, or should have discovered, that the defendant caused the claimed injury. Its focus is on wrongful efforts by the defendant to prevent the plaintiff from suing in time. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir. 1990), cert. denied, U.S., 111 S. Ct. 2916 (1991). Assuming that this evidence is even admissible, Lampert does not explain how a reasonable jury could find that these acts unfairly prevented him from bringing his suit on time. See Courtney v. Union Pacific R.R. Co., 713 F. Supp. 305, 307 (E.D. Ark. 1989). While those factors might have been argued as an element of damages, there is nothing to suggest that any of them individually or in combination might have deterred Lampert from timely pursuing a claim arising from facts about which he had either actual or constructive knowledge.
 
 IV.
 
 15
 The grant of summary judgment for N & W is affirmed. Reasonable people could not disagree that Lampert either knew or, through the exercise of due diligence, should have known that his hearing loss could be work-related before March 27, 1987. This claim, filed March 27, 1990, is time-barred.
 
 AFFIRMED